**HUMPHREY et al. v. McCARTY et al.***
(No. 10110.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 17, 1923. Rehearing Denied March 24, 1923.)

**1. Accord and satisfaction ⊂⊃8(1)—Agreement to receive less than debt, unsupported by consideration, is not a discharge.**

An agreement, not supported by a consideration, for a creditor to receive a less sum than the whole, will not discharge the debt.

**2. Accord and satisfaction ⊂⊃8(1)—Where lessees claimed $100 per acre allowance for shortage of land leased, payment of $75 per acre not consideration for release.**

Where, after an oil and gas lease on 217 acres of land was purchased for $21,700, a shortage of 85.6 acres was discovered on survey, and lessees executed a conveyance of title to the 85.6-acre shortage to lessors and received consideration at $75 per acre only, no consideration passed to support the assignment conveying the shortage, standing alone, and, as lessees did not agree that the amount received was in full satisfaction, their claim was not discharged.

**3. Guardian and ward ⊂⊃119—Presentment of claim against wards prior to suit held necessary.**

In view of Rev. St. art. 4051, providing that the rules governing estates of decedents shall apply to and govern guardianships whenever applicable, and article 3457, which provides that no judgment shall be rendered on a claim which has not been legally presented and rejected by an executor, before an action may be begun against minors and other wards, claims relating thereto must first be presented to the guardian for approval or rejection.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by T. D. Humphrey and others against Mrs. Annie V. McCarty and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded for new trial.

Cook, Spencer & Bailey, of Wichita Falls, for appellants.

Harris & Martin, of Wichita Falls, for appellees.

BUCK, J. T. D. Humphrey, O. W. Harvey, Roy I. Carter, C. C. Schumway, and Judge Chas. F. Spencer bought from S. H. McCarty, Jr., his mother, brothers, and sisters, an oil and gas lease on 217 acres of land in Wichita county, for $21,700. Some time after the purchase, the buyer had the land surveyed, and it was found that there were only 131.4 acres in the tract; there being a shortage of 85.6 acres. Efforts were made by the lessees to have the lessors return the $8,560, alleged to be due upon a valuation of $100 an acre, and finally the lessors did pay the lessees $6,420, or $75 an acre, for the shortage. This suit was filed by the lessees, except Judge Spencer, to recover the $25 an acre for the shortage. Judge Spencer stated that he personally waived his claim for any return, on account of the fact that he felt that some of his associates might blame him for not having the land surveyed when he leased it.

The cause was tried before the court without the intervention of a jury, and the trial court sustained the plea in abatement, interposed by Mrs. Annie McCarty, as guardian for five minor children, that the claim against the guardian of the minors had not been presented to her and payment refused before the filing of the suit, as required by law. The trial, as to the claims of the plaintiffs against the other defendants, resulted in a judgment for the defendants.

At the time the $6,420 was repaid by the lessors to the lessees, S. H. McCarty suggested that a lease be given to him of the 85.6 acres, and T. D. Humphrey, in whose name the title had been placed, executed a conveyance of the title to the 85.6 acres which, omitting formal parts and the recitation that a lease had been made by the McCartys to the plaintiffs theretofore, and omitting the description, reads as follows:

"Said lease being recorded in the deed records in and for said county, in Book 40, page 428, and

"Whereas, the said lease and all rights thereunder or incident thereto are now owned by the undersigned:

"Now, therefore, know all men by these presents, that I, T. D. Humphrey, for and in consideration of one dollar, and other good and valuable consideration to me paid, the receipt of which is hereby acknowledged, hereby bargain, sell, transfer, assign and convey unto the S. H. McCarty, the said lease and all rights thereunder in so far as it covers all of the 217 acres with exception of 131.4 acres adjoining the 100 acres heretofore leased by McCarty et al., as mentioned in above original lease (it being the intention of this assignment to convey all of my interest in said 217-acre lease, with exception of 131.4 acres as mentioned), together with all personal property used or obtained in connection therewith.

"To have and to hold unto the said S. H. McCarty, his heirs, and assigns.

"And, I, for myself, and my heirs, and legal representatives, do covenant with the said S. H. McCarty, his heirs and assigns, that I am the lawful owner of the said lease and rights and interest thereunder and of the personal property thereon or used in connection therewith, that the same are free and clear from all liens or other encumbrances, and that all rentals and royalties due and payable thereunder have been duly paid.

"In witness whereof, I, we, or —— have signed and sealed this instrument, this 20th day of December, 1919. T. D. Humphrey."

Judge Chas. F. Spencer, T. D. Humphrey, and O. W. Harvey were the only witnesses who testified in the trial. Judge Spencer testified that when the lessees made demand on Houston McCarty, representing himself and all the other defendants, for a return of the $100 per acre paid for the 85.6 acres which the tract was found to be short, at first McCarty seemed unwilling to return anything. Finally he consulted with Judge Harvey, and the result was they paid back $6,400 (which amount other evidence showed was really $6,400). That McCarty claimed that they had paid the agent who sold the lease $25 an acre in the way of commission, and that the plaintiffs ought to recover that amount from him. That the witness told McCarty that the plaintiffs had nothing to do with the agent, that McCarty had employed and paid him, and that only he could get the agent to pay back the $25 per acre. That under the understanding between the lessors and lessees at the time of the purchase of the lease on the 217 acres, the lessees were to pay no part of the commission, just to pay $100 per acre. That there were eleven children, and Mrs. McCarty owned 11.22, the minors 5.23, and the other six children, adults, owned 6.22. That he was positive that none of the lessees released their part of the $25 an acre, except himself. Humphrey testified that none of the lessees, except Judge Spencer, agreed to release their claim for the return of the $25 per acre on the shortage. They never agreed to take less than the full amount, and so told S. H. or Houston McCarty.

Mr. Harvey testified generally to the same effect as did Mr. Humphrey, and that McCarty said that he was paying taxes on the 217 acres of land, and he thought that if he had to refund any amount that he would like to have some paper so if the occasion ever arose he could get his money back, so that he might get the benefit of whatever there might be in it, and that he asked that the lessees make a conveyance of their interest, whatever that might be, in this shortage; that he wanted to protect himself in case it ever amounted to anything, so he could get his money out of it.

Houston McCarty, though it appears he was present at the trial, did not testify.

The trial court filed his findings of fact and conclusions of law. He finds that the defendants acting by and through the defendant S. H. McCarty, Jr., who was their duly authorized and acting agent, executed the lease to T. D. Humphrey, who was the duly authorized and acting agent for the plaintiffs, on 217 acres of land, more or less, out of a 317-acre tract of the Sam O. Fowler survey. That said lease was made, executed, and delivered, and the consideration of $21,700 was paid by the lessees to the lessors. That upon a survey of the said tract of land it was found that it contained only 131.4 acres, and

a controversy arose between the plaintiffs and the defendants as to said shortage and the consideration paid therefor. That subsequently S. H. McCarty, Jr., acting for himself and the other defendants, delivered to O. W. Harvey, acting for himself and the other plaintiffs, a check for $6,420, which was accepted and cashed by the plaintiffs. That said Humphrey executed and delivered an assignment to S. H. McCarty, Jr., of all the land previously conveyed in the lease from defendants to plaintiffs, and conveyed to said McCarty all of the interest of the plaintiffs in said 85.6 acres of land. That McCarty gave a check in payment of the $6,420 and on it was the following memorandum: "For lease from T. D. Humphrey." The court filed the following "conclusions of law":

"1. That said check was accepted by said plaintiffs in full and final payment of said claim for such shortage of acreage.

"2. That said assignment is a written instrument which embodies all agreements made by the plaintiffs and defendants prior to its execution and delivery and that same is plain and unambiguous.

"3. That said plaintiffs by said assignment conveyed all of their interest in and to said land, oil, and gas lease, in so far as the same covers the 85.4 acres of land in controversy; and that they have no right to maintain an action based upon the terms and conditions of said original lease, same having been conveyed for a valuable consideration to S. H. McCarty, in whom all rights of said original lease are now vested."

[1, 2] Inasmuch as the trial court stated that the assignment from Humphrey to McCarty was a written instrument embodying all agreements made by the plaintiffs and the defendants prior to its execution and the same is plain and unambiguous, it follows that such finding or conclusion of law was, in the opinion of the trial court, upon a question of law, and that this court is authorized and required to determine whether or not such conclusion is correct. It is well settled, elementary in fact, that an agreement, not supported by a consideration, for a creditor to receive a less sum than the whole, will not discharge the debt. Lanes v. Squyres, 45 Tex. 382, 385. The payment of a part only of the liquidated sum due at the time and place of payment, on the promise of the creditor to cancel the whole claim, discharges the indebtedness to the amount of the sum paid and nothing more, if there is no consideration for the promise to discharge. Rotan Grocery Co. v. Noble, 36 Tex. Civ. App. 226, 81 S. W. 586, writ denied; Woodall v. Life Ins. Co. (Tex. Civ. App.) 79 S. W. 1090. If the land described in the conveyance from Humphrey to McCarty was a shortage then no land existed to convey. Certainly, no consideration passed to Humphrey or the plaintiffs from McCarty to support the assignment, standing alone.

Harvey testified that McCarty did not buy the lease from him with a check for $6,420; that the check was in part settlement for what was due the lessees. All of the lessees who testified stated positively that they did not agree that the $6,420 received was in full satisfaction of the claim of the lessees against the lessors. We conclude that the judgment in favor of the adult lessors should be reversed and the cause remanded.

[3] As to the action of the trial court in sustaining the plea in abatement of Mrs. Annie McCarty as guardian of her minor children, we are inclined to think that such action shows no error. Article 4051, Rev. Civ. Statutes, provides:

"The provisions, rules and regulations which govern estates of decedents shall apply to and govern such guardianships, whenever the same are applicable and not inconsistent with any of the provisions of this title."

Article 3457, Rev. Civ. Statutes, under the title "Estates of Decedents," is as follows:

"No judgment shall be rendered in favor of a claimant upon any claim for money which has not been legally presented to the executor or administrator, and rejected by such executor or administrator, either in whole or in part."

It has been held that a claimant suing on a claim against an estate must not only allege the presentation and rejection of the claim, but must also allege the proper authentication of the claim when presented. Whitmire v. Powell (Tex. Civ. App.) 117 S. W. 433, and authorities there cited. We see no reason why this article is not applicable to claims presented in guardianship proceedings, or is inconsistent with any of the provisions of the chapter on "Guardian and Ward." It seems clear to us, from reading title 64, c. 15, that it was the intention of the Legislature that all claims against the estate of minors and other wards should first be presented to the guardian for approval or rejection, and we think such fact should have been alleged in plaintiffs' petition in so far as the recovery sought from the guardian of the minors is concerned. In Low v. Felton, 84 Tex. 378, 384, 19 S. W. 693, 695, cited by appellant, it is said:

"It is claimed, that the action could not be sustained because the claim was not presented to the guardian and by him rejected before the suit was brought. The statute does not in express terms require that claims shall be presented to a guardian and be rejected by him or by the county court before suit can be brought upon them, and it is not necessary in this case to determine whether this is ordinarily necessary; though we may say that in most cases this would be proper in order to protect minors' estates from unnecessary costs.

"In so far as the minors are liable on account of property received from their mother, such presentation was not necessary, even if this were ordinarily necessary, for she was a party to the action when brought, and in such cases it has not been held necessary on the death of a defendant to dismiss an action or to present the claim to a legal representative before prosecuting it to a final judgment, even under the statutes regulating the administration of the estates of deceased persons. Boone v. Roberts, 1 Texas, 159; Bennett v. Spillars, 7 Texas, 602, 9 Texas, 521.

"If necessary to present a claim to a guardian before suit in any case, the claim to be presented would be that asserted against the ward, and in cases like that before us, not the claim against the ancestor; for the heir is only liable to the extent of debt-paying assets received."

In the instant case, the claim is one against the wards themselves, and even under the Supreme Court decision above it would be proper to allege and prove the presentation to the guardian before suit, and her rejection or that of the probate court. In Webber v. Swift & Co. (Tex. Civ. App.) 226 S. W. 509, Webber, as principal, and Nye, as surety, executed a written contract whereby goods were sold to Webber, but the amount thereof was not paid. Later, Nye became insane and his wife was appointed guardian. Suit was filed against Webber and Mrs. Nye as guardian of her husband. It was held by the San Antonio Court of Civil Appeals that it was not necessary to plead or show that a claim had been presented to the guardian and she had rejected it before suit, because her liability as guardian was contingent upon the failure to collect the judgment obtained from Webber.

But we do not believe these two authorities relied on by appellants show error in the trial court's sustaining the plea in abatement in the instant case. At any rate, as held by Low v. Felton, supra, it would be safer for the claim to be presented.

The judgment below is reversed and the cause remanded, for a new trial not inconsistent with this opinion.