## JOHNSON et al. v. FIRST MORTG. LOAN CO. OF SAN ANGELO.

### No. 8845.

Court of Civil Appeals of Texas. Austin.

Dec. 30, 1939.

Rehearing Denied Jan. 24, 1940.

Murphy & Leslie, of San Angelo, for appellant.

Carter T. Dalton and Robert T. Neill, both of San Angelo, for appellee.

## McCLENDON, Chief Justice.

Appellee sued appellant Meadows in his capacities, (1) as administrator of the estate of James W. Johnson, deceased, and (2) as guardian of the estate of Mrs. A. D. Johnson, n. c. m., upon a promissory note for $21,407.38, executed March 22, 1932, by Mr. and Mrs. Johnson (husband and wife), payable to a bank and later assigned to appellee; and to foreclose a trust deed of even date securing the note upon separate real estate of Mrs. Johnson in possession of the guardian. Appellee also sought reimbursement for taxes upon the property covered by the trust deed paid subsequently to the date of the note. Mrs. Johnson and the children of Mr. Johnson (as his sole heirs at law) and one Hudspeth (alleged to claim a lien upon the property) were also made parties defendant. The case was tried to a jury but at the close of the evidence was taken from the jury and judgment rendered in accordance with a motion for judgment filed by appellee. This motion admitted that the evidence disclosed that Mrs. Johnson was insane when she signed the note and trust deed, and was not bound personally thereon. It prayed judgment against the administrator upon the note, and against the guardian to establish a lien upon the trust deed property for certain sums aggregating with interest $14,195.92 incurred and paid for the benefit of said property. No personal judgment was rendered against Mrs. Johnson and judgment was rendered in favor of Hudspeth and the Johnson children on their disclaimers. The judgment was ordered certified to the probate court for execution in the administration and guardianship proceedings. Meadows has appealed in his two stated capacities, without bringing up statement of facts.

The case was tried upon appellee's fourth amended original petition, prior pleadings not being included in the record on appeal. This petition does not allege that the claim had been presented to the administrator or guardian as required by R.C.S. Arts. 3509, 3530, 4239, and (by reference) 4108 (see Humphrey v. McCarty, Tex.Civ.App., 251 S.W. 609); and the only asserted ground for reversal is the insufficiency of the peti-

tion on that account to confer jurisdiction upon the district court. The point is raised by special exceptions to the petition, which were overruled; and is also urged as fundamental error.

■ The above statutory requirement is mandatory; and compliance is an indispensable prerequisite to the right to sue, unless the claim falls within one of the classes as to which presentation to the administrator or guardian is held to be unnecessary. Generally speaking and for the purposes of this case, these excepted classes are (1) when the claim is unliquidated, and (2) where justiciable issues are involved calling for relief beyond the powers of the probate court adequately to afford. A petition which does not allege such presentation and rejection of the claim or show that the claim falls within one of the excepted classes is bad on general demurrer. See Dempsey v. Gibson, Tex.Civ.App., 105 S.W.2d 423, for citation of pertinent decisions.

Whether the claim, tested by the allegations of the petition, falls within one of the excepted classes, is therefore the determining question before us. The petition alleges that:

Mr. and Mrs. Johnson executed the note and trust deed in compliance with legal formalities. Mr. Johnson thereafter died and appellant was administrator of his estate. Mrs. Johnson had been adjudged insane (date not given) and appellant was guardian of her estate. The note was the culmination of several renewals and embodied various sums paid by the bank upon Mrs. Johnson's request and for the benefit of her estate. These sums were: (1) A stated indebtedness of Mr. Johnson to the bank secured by chattel mortgage on livestock which was transferred by the bank to Mrs. Johnson; (2) various stated amounts paid by the bank to defray taxes on Mrs. Johnson's above real estate; (3) a stated amount advanced by the bank to take up a valid paving lien upon said real estate; (4) two stated amounts advanced by the bank to discharge judgments against Mr. Johnson which had been abstracted and execution levied upon said real estate; (5) stated amounts advanced by the bank to pay attorneys' fees and other incidental itemized expenses incurred in protecting Mrs. Johnson's above real estate from sale under said judgments. In addition to these sums embodied in the note recovery was sought for other stated sums

paid out subsequently to the date of the note, to discharge tax liens upon the above property.

As to Hudspeth the petition alleged: "That the plaintiff, Roy Hudspeth, when first cited herein, claimed a lien on all or part of the property herein involved, which lien plaintiff alleges to be inferior to the lien of plaintiff, but that since the institution of said suit, has filed his disclaimer herein, and plaintiff prays judgment against the said Roy Hudspeth only on said disclaimer."

As to the Johnson children the petition alleged that Mr. Johnson "died leaving as his heirs the defendants (naming the children), and that said defendants are claiming some interest, the exact nature of which is to plaintiff unknown, in the lands described herein; but whatever interest said defendants may have in the lands herein described is inferior to and subject to plaintiff's lien."

■ It is quite clear that no item in appellee's claim is unliquidated. Anderson v. First Nat. Bank, 120 Tex. 313, 38 S.W. 2d 768.

As to the claim against the administrator: The petition shows that as to the items incurred for the benefit of Mrs. Johnson's separate estate, that estate, or in any event that portion of her property for the benefit of which the items were paid, was primarily liable, and to the extent that those items were embodied in the note Mr. Johnson's liability on the note was secondary or that of a surety.

R.C.S. Art. 6251 provides: "No surety shall be sued, unless his principal is joined with him, or unless a judgment has previously been rendered against his principal, except in the cases otherwise provided for in the laws relating to parties to suits."

The excepted cases referred to are: "When the principal obligor resides beyond the limits of the State, or where he cannot be reached by the ordinary process of law, or when his residence is unknown and cannot be ascertained by the use of reasonable diligence, or when he is dead, or actually or notoriously insolvent." R.C.S. Art. 1987.

Mrs. Johnson, the principal obligor as to the stated items, manifestly does not fall within any of the excepted classes; unless it should be held that the fact that her estate was being administered by the probate court by analogy places her for the purposes of the statute in the class of one deceased—a question we later discuss.

■ The statute makes no reference to the status of the surety, and on principle it would seem that it would make no difference whether he were living or dead and his estate sought to be bound. The statute is for the benefit of the surety, and no valid reason suggests why his estate should not be accorded the same right that would be accorded to him if living.

■ It is also manifest that the probate court sitting in administration on the estate of Mr. Johnson had no jurisdiction to bring into that administration the guardian of Mrs. Johnson in a wholly separate and distinct estate. If, therefore, the statute applies to the case at bar, the claim falls within the second exception above noted as being one as to which presentation to the administrator is not a necessary prerequisite to suit in the district court against both the principal and surety.

The only case we have been able to find in which this question was raised and adjudicated is Hume v. Perry, 136 S.W. 594, decided in 1911 by the Fort Worth court, in which a writ of error was granted but later voluntarily dismissed.

The pertinent facts of that case were these: Geo. L. Hume was guarantor upon a note upon which Evans was the principal obligor. The note was secured by vendor's lien and by a trust deed lien upon real estate other than that securing the vendor's lien. Hume died and Mrs. Hume was appointed executor, not, however, independent of probate court administration. Her status was therefore the same with reference to presentation of claims against the estate as that of an administrator (she is so designated in Jones v. Wynne, Tex. Com.App., 129 S.W.2d 279). The claim was presented to Mrs. Hume, who rejected it, and suit was brought thereon in the district court against her, as executrix, and Evans—not, however, until after the 90-day statutory (Art. 3522) period had elapsed within which suit might be filed upon a rejected claim. The judgment was reversed by the Fort Worth court upon the holding that the statute requiring suit against the principal before or simultaneously with suit against the administratrix applied; that presentation of claim to her was unnecessary and, in effect a useless formality; and therefore the 90-day statute had no application.

That case has been cited with approval a number of times on other points; but, so far as we have been able to find, only once (in Jones v. Wynne, above) on the point at issue.

The opinion in Jones v. Wynne (adopted by the Supreme Court) was by Judge Taylor, of the Commission, and evidences his characteristic painstaking investigation and analysis of the salient decisions. That case was a proceeding by certiorari to review an order of the probate court allowing a claim against the estate of the wife of the administrator predicated upon a note executed by the husband and wife upon which the wife was only surety for her husband. The proceeding was brought by heirs of the wife. After holding that certiorari does not lie to review an order of the probate court approving a claim against an estate in administration, the court considered the proceeding from the viewpoint of an independent plenary suit against the administrator, and held (1) that since all the parties at interest (the husband-principal, the surety estate, and the heirs of the estate) were parties to the probate proceeding, that court had jurisdiction to determine (which it did) the insolvency of the husband and the incidental right of the claimant to proceed against the surety estate without suing the principal; and (2) that the order approving the claim was not subject to collateral attack, which an independent suit to set aside the order constituted.

The following comment upon the Hume case is quoted from the opinion [129 S.W. 2d 285]: "Plaintiffs cite the case of Hume v. Perry, Tex.Civ.App., 136 S.W. 594, as holding that where a decedent has a secondary liability on a note the district court is the proper forum in which to file suit and that the presentation of the claim to the administrator prior to filing suit against the party primarily liable, is a nullity. In that case, however, the Court of Civil Appeals held, with respect to the question of insolvency, that in the absence of a contrary showing it would be presumed that the principal was solvent. In the present case the order in question carries with it a finding of insolvency which eliminates the question of jurisdiction to determine liability of a surety, unless, of course, such finding is beyond the power of the court. We see no reason why, with the parties before the court it could not so find. The Hume case does not support the contention of plaintiffs that the probate court was without such power. The application for writ of error in that case discloses that the administrator refused to approve the claim and that the original suit thereon was not filed in the district court within the ninety days provided by statute. Art. 3522, R.C.S.1925. The Court in granting the writ made the following notation: 'Granted for probable error in not sustaining Mrs. Hume's (the administratrix) general demurrer to plaintiff's petition, since it showed (on) its face that claim was presented and rejected more than ninety days before suit was filed.' The record in the office of the clerk of this Court shows that after the writ was granted and before the cause was submitted it was settled by agreement of the parties and dismissed."

While the question of suretyship might have been involved in White Co. v. Stout, Tex.Civ.App., 102 S.W.2d 1065, error dismissed, we have examined the application for writ of error and find that the point was not raised. Nor is it adverted to in the opinion of the Court of Civil Appeals. This case is discussed below upon another point.

The opinion in the Hume case is an evidently careful consideration of the subject, and we are in accord with its reasoning and conclusion. The decision has never been overruled.

The fact that Mrs. Johnson was not sui juris, and her estate was in guardianship does not, we believe, constitute an exception to Art. 6251. The language of the article shows its provisions to be mandatory, "except in the cases otherwise provided for in" Art. 1987. The enumeration of the four situations or "cases" under established canons of legislative construction, by necessary implication, even in the absence of the express language of Art. 6251 ("No surety shall be sued * * * except"), excludes other "cases" not excepted. Courts should not by construction engraft upon the statutory exceptions others not embraced therein, unless the reasons therefor were so cogent and impelling as to authorize the assumption that such was the legislative intent. We are here dealing with statutory requirements upon a subject clearly within legislative purview. Administration under guardianship of estates of insane persons is of very ancient origin, and has always existed in this state. There is therefore no warrant for the assumption that the

legislature did not have in mind this class of "cases" in drafting the article. There are, of course, analogies between the two classes of estates when they are in actual administration. But there are important differences between estates of those deceased and of those who are insane. As to the former there may be no administration pending, in which case the creditor would be required to take out administration, if such were necessary; and if not necessary, he would be required to institute proceedings with their incident complications against heirs. Again, there are delays involved in the administration of decedents' estates which do not pertain to those of insane persons. We do not find justification for enlarging the express statutory exceptions so as to include the estates of the insane.

■ It follows that the trial court had jurisdiction of the claim against the administrator. This, in any event, if the claim against the guardian is such that presentation thereof was not required, a question we now consider.

■ In so far as concerns the question of suretyship, that is that portion of the notes' consideration as to which Mr. Johnson was the principal debtor and Mrs. Johnson the surety, there was no necessity to proceed against the principal debtor as prerequisite to proceeding against the surety since the former was dead, a "case" expressly excepted by Art. 1987. The fact that there were involved adjustments between the two estates was, it seems, a matter which did not concern appellee. White Co. v. Stout, above.

Jurisdiction over the guardian appears therefore to depend upon whether: (1) The alleged existence of an equitable lien against Mrs. Johnson's separate property; or (2) the adversely asserted interests of Hudspeth and/or the Johnson children were within the powers of the probate court to adjudicate and afford adequate relief.

■ Upon the first point, that of the assertion of an equitable lien upon the separate property of the ward in the hands of the guardian, we regard the case of Pavelka v. Overton, Tex.Civ.App., 47 S.W.2d 369, 370, error refused, as directly in point. The opinion is a well considered one by Judge Randolph, then of the Amarillo Court, formerly of the Commission of Appeals. That was a suit to set aside a judgment against the guardian of minors' estates, which had been rendered by default. The facts in the prior case, as disclosed by the pleadings, were that the plaintiff asserted against the wards' estates a money claim for a fixed amount and an equitable lien upon the wards' real estate to secure such amount. The claim arose from exchange of real estate between plaintiff and the guardian, and an alleged misstatement as to the amount of encumbrance represented to exist against the property thus acquired by plaintiff. The pleadings did not show presentation of the claim to the guardian. The judgment, in so far as it was against the wards' estates (guardian as such) was sustained upon the following express holding: "The probate court of Floyd county had no equitable jurisdiction to adjust the matters between the parties. That court had no jurisdiction to establish an equitable vendor's lien upon the blocks of land sold by the appellee to appellants, and could not foreclose such equitable liens."

A great deal has been written upon the subject of the power of the probate court over mortgage and other express liens asserted against property of decedents in administration. The decisions seem to be in hopeless conflict. We shall not attempt to reconcile them. Many of them are cited and analyzed in the briefs. We shall only refer to the above case of White Co. v. Stout, supra, in which writ of error was dismissed. That was a suit upon a negotiable paving certificate secured by paving lien which was sought to be foreclosed. The lien property had been conveyed by general warranty deed, the grantee assuming two trust deed encumbrances on the property, but no mention was made of the paving lien. The grantee died, his estate was in administration, the trust deed lien holders had proved up their claims in the administration and the property was sold free of lien. The suit was against the maker of the paving certificate for personal judgment and against the administrator, the holders of the trust deed liens, and the purchaser at administration sale, to foreclose the paving lien. Personal judgment against the maker of the paving certificate was affirmed. Other relief was denied upon the ground that the plaintiff had not presented his claim to the administrator and therefore the court had no jurisdiction in the matter. This holding was essential to the judgment rendered, and we regard dismissal of the writ as approving

it, regardless of whether the 'Supreme Court was willing to approve the *opinion* as a whole. The holding is decisive of the issue as to the Hudspeth asserted lien. As stated, we have examined the application for writ of error in this case. The case of Pavelka v. Overton, above, was cited. Had the Supreme Court considered that a conflict was presented by the two decisions, we are confident the writ would have been granted.

█ As to the claim of the Johnson children it is to be observed that the allegations of the petition are extremely vague. If their claim were based solely upon heirship to their father's estate, then clearly they were neither necessary nor proper parties to the litigation. O'Neil v. Norton, Tex.Com.App., 29 S.W.2d 1060; Zamora v. Gonzalez, Tex.Civ.App., 128 S. W.2d 166, error refused.

█ If, on the other hand, they were asserting some title or claim (other than a mere lien) upon the property of their mother, the probate court had no jurisdiction thereof, and the district court had jurisdiction. Since the rules of pleading in this character of cases require an affirmative showing of jurisdiction on the part of the plaintiff, we regard the allegations insufficient in this respect. Since we are holding that jurisdiction was alleged in the assertion of an equitable lien upon the property, it is not necessary to elaborate upon this point.

The trial court's judgment is affirmed.

Affirmed.